1-7-1-2-5-6 Catherine May McKee v. William H. Cosby, Jr. Good morning, Your Honors. May it please the Court, my name is Bill Salamone, the attorney for Catherine May McKee. I'd like to reserve two minutes for rebuttal. You may have it. Thank you, Your Honor. This case is about defamation and about restoring the good name and good reputation of Catherine McKee, which was destroyed by Bill Cosby in a letter that he wrote that he had published to a newspaper. Ms. McKee filed a lawsuit, she filed an amended complaint, and the district court dismissed the amended complaint under 12b-6. I submit to you that that decision was erroneous and based on mistake of fact of the law. And I'm asking this Court to overturn that decision and to reinstate the complaint, the amended complaint, and to declare or find that the proper law for the choice of law in this case is Massachusetts law, rather than Michigan law as found by the district court. Now the facts in the record of this case are that in 1974, Bill Cosby raped Catherine McKee in a hotel in Detroit, Michigan. The facts in the record also show that for the past 40 years, Bill Cosby has used his ability and his power as someone who can manipulate the media to intimidate, harass, and keep his accusers silent. That's what happened to Catherine McKee. She was always afraid of Bill Cosby. She said she was afraid of him physically, and she was afraid that he would eventually destroy her reputation and try to destroy her career in the entertainment industry. Your client was a volunteer to this dispute, was she not? In other words, she came forward long after the statute of limitations had passed in connection with her claimed rape, and she became, did she not, a limited public figure when she voluntarily joined this parade? She was not a limited purpose public figure. A limited purpose public figure, first of all, you need a public controversy in order to become one. There is no public controversy here. Well, the reason she came forward is because other women were coming forward making the same allegation. Yes, that's true. So why isn't that the public controversy? Public controversies on the Supreme Court case law are things like police brutality, waste of taxpayer funds, abuse of the people. In other words, there's something that becomes a cause to celebrate, and somebody that's the Supreme Court of the United States said that, just because you can call it something that the media is focused on, that people want to know about, that has salacious details to it, that is not a matter of public controversy for a public figure's status. I'm sorry. If I've understood your argument, it has to be about public institutions, such as police or abuse in schools, things like that, and that the rape issues concerning Mr. Cosby are not, in that sense, public. They are a series of private disagreements. Exactly, Your Honor. That's the argument you're making. What is the Supreme Court case that you say establishes this? There's two cases, Your Honor. The first is timing against Firestone, which was a celebrity divorce in Palm Beach, Florida. There were some salacious details about the divorce, about perverted sexual activity. I'm sorry. Are you drawing the line at salacious? I thought you were drawing the line between public and private. Your Honor, I'm not the one drawing the line.  You are answering the question about why your client is not a limited public figure. Okay. The Supreme Court has said that, first of all, in order to be a public figure, there has to be a public controversy, and the person has to inject themselves into that public controversy, the vortex of that public controversy, in such a way as to try to influence the outcome of that public controversy. There is no public controversy here. There is a public cause celebre, which is what the Supreme Court said in Firestone and also in Williston against Reader's Digest. In that case, they said, the plaintiff there gave an interview and was interviewed in the newspaper, and they said, just because you give an interview in the newspaper and become a famous, or your story becomes a media circus, doesn't make you a public figure. It doesn't make you a limited purpose public figure. She's not, first of all, she's not a public officer. Well, the fact that there are criminal charges, doesn't that equate to police brutality? I don't know why or why. Because he's not a state actor. He's not, you know, it's not a Fourth Amendment issue where the police are abusing certain parts of the community. That's a racial protest, a civil rights protest. I guess it's, I don't know. You're saying that anything that individually doesn't rise to the level of public controversy. Right. The word public controversy. The fact that he's charged with crimes, rape is a crime. The fact that all of this, that doesn't equate. As far as I know, he was only charged with one crime in Pennsylvania. I don't know if he was being charged with any other crimes. Now, if you're trying to say that. Isn't the point of these women coming forward to say that he should be deemed guilty in the one charge that's pending? Well, there isn't anybody in front. There's no class action. Kevin McKeon stands by herself. Her case is false or succinct. She came forward because other women were coming forward. She said that she thought she was the only one. When she heard in 2014 that there were other women coming forward, she decided to come forward with her story as well. That's what made her come forward, hearing that there were other people coming forward. Before that, she was silent. But that still doesn't rise to the level of a public controversy. If she is a limited public figure, then you agree she has the burden of alleging malice. Agreed? Right. Right. She should have 100. Okay. So in some senses, your case rises or fails on this limited public figure question. No, Your Honor. I don't think my case rises or falls on a public figure status. Okay. Assume she is a limited public figure. I understand. So if she is a limited public figure, the burden would shift under the Supreme Court case law to the plaintiff to prove actual malice under the New York Times v. Sultan and Standard. That means the deliberate falsity or reckless disregard of the falsity of the defamatory statements. That is what we've planned in the amended complaint, that Cosby, he knows the rape occurred. He knows that she's not lying about the rape. So therefore, when he denies it, when he issues his letter saying that she lacks credibility or she's a liar, he knows that that's false. And that's what we've planned, actual falsity. And at this stage of the litigation, we're still at the pleading stage. We haven't gotten an answer from Mr. Cosby. So it's not that I'm worried about him to prove actual malice. That would come up in a trial. That doesn't end my case. That doesn't destroy my case. It makes it more difficult for me. I'm sorry, but I thought there were a number of circuit court cases at least that resolve the malice question on the pleadings and that the First Amendment law quite allows one to do that. Is there some case that says, no, you can't do that, you have to wait until summary judgment? I don't know of any case that says that. I mean, Your Honor, I can get back to you on that. I can research that issue. No, you all have briefed this to a fair degree. Thank you. But I don't know of any case that says that. But in those cases, the ones that I'm aware of, where they dismiss the case on the pleadings, they said that there's no way to prove falsity. There's something about the Fraxinide case that the plaintiff has alleged or supported. Okay. So let's take up that theme. As to the letter's statement that she's not credible, I think a number of courts and the district court here would say, well, that's a matter of belief that is not either true or false. I understand your case, though, to go beyond that and to say specifically she accused him of rape. He did not directly answer that accusation, but Mr. Singer's letter indirectly answers that allegation by saying she is not credible in her claim of rape. Okay. So I'm drawing a distinction here, which I believe you are making. Whether she was raped or not is a question that is true or false. Either she was raped or she wasn't raped. So if one were to generously construe your complaint in those terms, isn't he still saved by the fact that he puts in a number of sources for his view? Okay. So I'm drawing a distinction here.    And it's a deceptive and false document. It presents false facts. It alleges that... Michael, what facts are false? Okay. First of all, it says that there's a mountain of evidence out there which undermines her credibility. There is no such mountain of evidence. It says that a Google search will reveal things that undermine her credibility and prove she's a liar. There is no such evidence out there. Please make that up. You know, I'm looking at the letter. And I'm looking at the first seven items, bulleted items that he has. All those seem to be statements which your client has not said that she didn't make. So... That's one of the worst parts of that letter. It's part that it's... Whenever I think about it, I sort of start to get angry. Because what he's doing, he's saying that her own words, okay, her own words and her actions undermine her credibility and show she's a liar. But those are not her words. Those are words taken from two newspaper articles written by newspaper reporters. There's no guarantee when you give an interview to a reporter that... But the sources are there available. And isn't it true that some of the news stories that allegedly came out after this letter were favorable to your client? I don't know what you mean by favorable. The only ones I saw, the ones I could find, are ones where he's saying, Catherine McKee was lying about the rape. Catherine McKee is an unchaste woman. Catherine McKee has a criminal record. That's... Those are true. Does she have a criminal record? In the letter... Sorry, can I finish this one thought? You can finish the sentence and then reserve time. There's bullet points that say accusers have criminal records and arrests for lying to police. I took that to be a generalized statement and not a statement about her. Understandably not true. If you juxtapose something... If you say something to a member of a group and then you say the group has problems, the reader is entitled to infer... I get your point. Thank you. Thank you. Mr. Greenberg. Thank you. Good morning, Your Honors. May it please the court, Alan Greenberg for the appellee, William H. Cosby, Jr. And with me is my co-counsel in the district court proceeding, Mr. Michael McDonough. Isn't he your co-counsel up here as well? I don't know that he's filed a notice of appearance. Please do that. Okay. Your Honors, the district court never ruled that the First Amendment protects defamation, which is what they called a core mistake in their briefing. That's not a fair characterization of the district court's ruling. It would be helpful if, I assume you've listened to the questions we put to your brother, if you could turn your argument to that and abandon whatever script you have. And pull the mic up a little closer. Is he a limited public figure? Yes. And why? I will turn directly to the... A salacious private affair. Well, Your Honor, the plaintiff kept this claim of rape private for 40 years, but then she did not get caught up in it, which was counsel's words. She went public in the biggest way on the biggest stage that there is. She gave an exclusive interview to the Daily News. He's arguing, look, it has to do with the integrity of public institutions. It doesn't have to do with newsworthiness. And I'm asking you, what's wrong with that argument? Well, what's wrong with it is that it's not correct. So in the First Circuit case that Judge Mastriani cited, and I apologize for the pronunciation, the Uberus versus Uncommon Productions case, L-L-U-B-E-R-E-S, 2011 case, that concerned a documentary called The Price of Sugar that concerned treatment of Haitian laborers on sugarcane plantations. It wasn't about police brutality or any issue of public government conduct within the United States or even in Haiti. It was a totally private affair about plantation owners in Haiti. And in that case, it was deemed that those people from the sugarcane plantation were limited purpose public figures. And the relevant question is whether they volunteered for an activity out of which publicity would foreseeably arise. And that is certainly something that happened here in which the plaintiff could have maintained this as a private matter. There's all kinds of things she could have done privately to discuss this matter in a private setting. She went and gave an interview to the Daily News that was then splashed all over the world on the Internet, posed for a picture that's part of the article. It's all in the record. But you're not saying she couldn't be public. You're just saying she can't be public and sue. Well, she went. There's a First Amendment, so she can go public subject to defamation claims potentially being brought against her. But that does make her a limited purpose public figure. She volunteered for going public. She was not dragged into it, which is what happened in the Time Firestone case where there was a divorce. People have to file in court so their affairs become public. And then the media picked up on it and started writing about it. And then there were, in a footnote, it's mentioned that there were press conferences to respond to the media. But that's different because the media got involved in this cause celeb regarding a matter where the individuals, the Firestones, did not try to get publicity. They did not volunteer to have their credibility scrutinized by the public. But that's exactly what the plaintiff did in this case. She put her credibility on the line by making these terrible accusations in the most public possible way, which she did not have to do. All right, so the next series of questions had to do with if we assume she meets the test for limited public figure, what the burden shifts to her to show what? To show knowledge of falsity or reckless disregard for falsity, which is defined as a rather high standard meaning awareness of probable falsity and disregard for whether it was actually false. And that has to be proven by clear and convincing evidence. Here at the pleading stage, it is a matter that the courts regularly deal with as a pretrial matter, either at the pleading stage or at summary judgment, unless there's a dispute of fact that's necessary to be resolved at trial. Here, there's not. The court looks at the plausible allegations of the complaint because it's a 12B6 motion. And while there are conclusory allegations that there was actual malice, there is nothing in the complaint that sets forth that any of the statements in Mr. Singer's letter are things that Mr. Singer or Mr. Cosby would know to be untrue. They're things taken straight from articles and other sources that were footnoted. He says by implication when the broad statement is made that Cosby's accusers have criminal records, that that is a reference to her and that there is no support for that and that Mr. Singer knows that that's not true. Well, Mr. Singer did not say that the plaintiff or even imply that the plaintiff has a criminal record. The letter that Mr. Singer wrote does not say that at all. And the plaintiff is saying, and really I think they're acknowledging that because in context it's very clear, and that's what the district court found, that he was not talking at all about the plaintiff in this case. He was talking about some of the other accusers in another case who had criminal records. And so they're comparing themselves to, it's in juxtaposition somehow by talking about other people having criminal records, and it's in a letter that mostly talks about Ms. McKee. So why is that in the Singer letter? The article is about her and her accusations. So it's sort of smearing her with mud by making statements about other accusers. What purpose does it serve? It serves a very important purpose, and it's not smearing her with mud at all, I don't believe. The letter is written to the Daily News. It's demanding a retraction. The Daily News, this was not their first article. But even in that context, what purpose does this serve? Because Mr. Singer was addressing the Daily News state of mind in publishing with actual malice statements about Mr. Cosby and was explaining to them that they are running, not just with Ms. McKee, but he specifically is talking about other accusers when he talks about criminal conduct, that they, that the Daily News is running stories about women who have criminal conduct and not being fair to Mr. Cosby. And that's what he's saying to the Daily News in this letter. This letter is not limited only to talking about the plaintiff in this case. Actually, I thought it was limited to complaining about the precise article about the interview with her. It's both. Is it complaining about other articles? It is. In context, he, in talking about the article with Ms. McKee, he does bring up that the Daily News and other media, he says that, are bringing up other people. What does the Daily News have to do with other media? Did the Daily News run other articles about women making this accusation who had criminal records? If not, I failed to see why this is germane. I believe the answer is no, or at least there's nothing in the record to support any such contention. That the Daily News published things about people with criminal backgrounds? Who made accusations of rape against Mr. Cosby. I can't believe I had not focused on that as an issue. No, I hadn't until the oral argument. Well, isn't it the context of journalistic standards? That's how I interpret it. Right. It was raised in the context of comparing the Daily News with other newspapers and their journalistic standards, which he's alleging that they didn't follow. So that's how I understood it. He's saying they're part of this trend and that they've sunk to a new low in what is passing off as journalism. He says, unfortunately, the Daily News is not alone and talks about the media and among other things that the media has routinely ignored relevant information, including criminal backgrounds of various accusers. That's not in any way talking about Ms. McKee or the article in the Daily News. It's talking about what the media did in other cases. And he made it very clear in context. And that's what the sentence before that talks about, publishing information about various women that the media has done. And so that part of the letter is a transition from talking about the plaintiff to talking about these various women. Your argument is that basically he's saying to the Daily News, you're not a very good newspaper. You don't do your job properly. Even on these other stories, you didn't look at the backgrounds of the people. You say this is not directly. They're not attributing that criminal conduct to his client. Well, correct, except he's also talking about other media and not just the Daily News there. But he's he's he's telling the Daily News that they need to. You're going to this sentence. Unfortunately, the Daily News is not alone. Correct. And then he talks about how the media is going in a media frenzy going after Mr. Cosby for with different accusers. And some of those various accusers had criminal backgrounds. That's what he said. And that is true. So that's not an issue about he wasn't talking about Ms. McKee in that sentence. OK, so you heard my questioning about the, you know, she's not credible, may not be a statement that is either true or false. But the implication that when she accuses him of rape, she's not credible on that accusation. That there is at least an argument that that is different. It is not really opinion. It is more an implicit refutation of something that is capable of being true and false. So what's your response to that? Is it that it doesn't matter because he had so many citations for the basis for his opinion? Well, it's not just that he had many bases and that he cited. It's that he cited all of the bases for his opinion. He had. We don't know that. Well, in context, that's what he's saying. I mean, that he cited certain things. But he did not say, as the writer did in the Milkovich case, I was there. I know what happened. And I'm telling you that they committed perjury was what happened in that case. But the clear implication of the letter, the entire purpose of the she is not credible is to undercut her rape allegation. And I keep coming back to either he did or he didn't rape her. And that may be proven. No, it will never be proven, probably because of the statute of limitations and the lack of criminal proceedings. Well, she said she I mean, in essence, this is a trap. So the statute runs on the original claim to Saul. Now the plaintiff shouts from the rooftops that it was this rape. And the defendant is given a Hobson's choice then of saying absolutely nothing for fear of being sued or in which case the public will think, well, why is this person not responding? Or and they must be guilty or saying, I did not do it. And then we're having this conversation. Well, I didn't. You said you didn't do it. And she says you did it. So you're defaming her. An odd thing about the Singer letter is that it doesn't just flat out say, no, her accusations are false. It never says that. What it does say is that you can't believe her because of all the other things that she's done. The fact that she's praised him. And so that's the argument. Well, the argument is that the Daily News should not have run a one-sided hit piece without having considered publicly available information that undercuts the plaintiff's credibility. And that is something that has been happening with the media. And that's how the letter is written. And that's all that he's saying in that letter. And what he's saying is what a lawyer does when their client is accused of something and they're demanding a retraction. That's what the letter is. On your view of this case, does the choice of law matter at all? It really does not because it's a First Amendment case. And that supersedes state law in all of the states for this purpose. And the First Amendment principle is she's a limited public figure. And on the pleadings, she cannot show knowing falsity because he's insulated himself with the number of citations. Is that basically it? Yes, but the addition that in the Noonan case, Noonan v. Staples, First Circuit 2009, the court dealt with this issue of when somebody says one thing that's true, but the plaintiff says people will infer from your statement something else, that that is not actionable defamation. And so that's another thing that I wanted to mention.  Thank you, Your Honors. Thanks, Your Honors. First of all, the not credible, that is just like in Justice Rehnquist's famous quote, John Jones is a liar, implies that someone knows John Jones lies on other occasions. So when you say, when Singer says she's not credible, that implies that he knows that she has some information that she's not credible. That's all false. Every one of his allegations, she didn't praise him online. She didn't say laudable things about him online. There is no amount of evidence out there. Those are all false. If you look at his citations, they don't exist, or they cite to two articles. And when he quotes those articles, those aren't her words. Those are the words of the person who wrote the article and her editor who were trying to sell newspapers. There's no accurate quotation there. And for him to say these are her words, that's false and defamatory because he doesn't even accurately quote the words. He puts his own little spin on them to make them even worse. Now, going back to Lou Berries, or you Berries, in that case there was a public controversy. The rights of workers in, I can't remember if it was Puerto Rico or the place that they were in, the court said this is a public issue, it's a public controversy. And the brothers, the plaintiffs, they injected themselves into that controversy. That's what the court found. There has been no such action in this case. The next thing is the First Amendment. If it does, if it applies to this case, which I argue it doesn't, but if it did, all we would do is change the burden of proof. From causing him to prove his statements are true to making them false. It doesn't eliminate the case. There isn't enough, in my opinion, I would cite paragraphs 205 to 211 and paragraphs 36 to 58 in any complaint that sets out actual malice in terms of New York Times v. Solomon. If it does not, I would ask this court that we be allowed to amend the complaint because otherwise it would turn into a malpractice case against me when I drafted that complaint. But it would be before the statute of limitations period and there would be no prejudice to Cosby. So thanks, Your Honors. Did you know that we have a flat rule that if you want to amend a complaint, you do it in the district court by written motion? Just that I'd advise you. Okay. Thanks, Your Honor. Thank you. All rise.